In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1943

GERI HEINEMEIER, formerly
known as GERI CHAMPION,

Plaintiff-Appellant,

v.

CHEMETCO, INCORPORATED,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 96 C 534--David R. Herndon, Judge.

Argued NOVEMBER 1, 2000--Decided April 18,
2001

   Before CUDAHY, COFFEY, and EASTERBROOK,
Circuit Judges.

   COFFEY, Circuit Judge. On June 20, 1996,
Geri Heinemeier filed suit against
Chemetco, Inc. and Tri-Me Transportation,
Inc., in the Southern District of
Illinois claiming sexual harassment, age
discrimination, and retaliatory
discharge. After the conclusion of
discovery, Chemetco and Tri-Me filed
motions for summary judgment. The
district court granted the motion with
respect to Chemetco, concluding that the
company was not Heinemeier's employer,
but denied the motion as to Tri-Me. A
bench trial was then conducted (Tri-Me
remained as a defendant) and the judge
awarded damages in the amount of
$411,310.00. This appeal involves the
sole question of whether summary judgment
was properly granted in favor of
Chemetco. We REVERSE and REMAND this case
for proceedings consistent with this
opinion.

I.   BACKGROUND/1
A.   The Companies

There are three relevant companies to this case: Chemetco, Tri-Me, and Triangle Metallurgical. All three companies were owned by Bill Wegrzyn and John Suarez during the relevant time frame. Not only were the three companies owned by the same two men, but also the operation of each was closely tied together. For example, Triangle Metallurgical sorts scrap metal and then transports copper scrap to Chemetco. Prior to 1986, the transportation of metal between Triangle Metallurgical and Chemetco was accomplished by the use of third-party contractors. In 1986, however, Wegrzyn and Suarez formed Tri-Me to retrieve and salvage scrap metal in East St. Louis, Illinois, process the metal in Granite City, Illinois, and thereafter transport the copper to Chemetco. At the time Tri-Me was formed, Juan Mena, its vice-president, hired Carl Schenck to operate Tri-Me as its manager of operations. Juan Mena also interviewed and hired the plaintiff who, on March 1, 1988, commenced her employment with either Chemetco, Tri-Me, or both companies./2

B.   Tri-Me as Heinemeier's employer

There are several known facts in this case that support the contention that Tri-Me alone employed Heinemeier. Initially, all of Heinemeier's paychecks were printed on checks issued by Tri-Me and signed by Schenck, a Tri-Me officer. Similarly, Heinemeier's W-2 forms for wage and tax statements reflect that her employer for the years 1992 through 1995 was Tri-Me; although she could not produce her W-2 forms for 1988-1991, Heinemeier conceded in her deposition that she believed these documents also stated that Tri-Me was her employer.

In addition to these documents, the location and duties of her job support a conclusion that Heinemeier was employed at Tri-Me. Her primary employment responsibility was to audit freight bills Tri-Me generated when it transported copper scrap to Chemetco. Although these bills documented a transaction involving both Chemetco and Tri-Me, Heinemeier usually performed this work at a facility owned by Tri-Me in Granite City, Illinois. Furthermore, she reported directly to Schenck and later, other Tri-Me officers when she was transferred to

another Tri-Me facility in Hazelwood, Illinois.

The record also contains evidence, in the form of an apartment application, that Heinemeier believed herself to be a Tri-Me employee. When Heinemeier filled out an apartment application on April 11, 1994, she listed her position as "Freight Audit Manager" for Tri-Me and identified Tri-Me Vice President Juan Mena as her employer. Later in the application process, Heinemeier submitted a "Request for Verification of Employment" form that was signed by Mena as "Vice-President for Tri-Me" and contained no mention of Chemetco.

C.  Chemetco as Heinemeier's employer

Not all of the facts in the record, however, lead to the conclusion that Heinemeier was solely a Tri-Me employee. Heinemeier submitted the affidavit of Carl Schenck in response to defendants' motion for summary judgment. In his affidavit, Schenck states:

3. I was employed at Tri-Me Transportation, Inc., as its Manager of Operations on March 1, 1988, at which time Geri Champion (n/k/a Geri Heinemeier) reported to work at the Tri-Me Transportation, Inc. facility located in Granite City.

* * * *

5. Geri Champion's salary was paid to her out of the Tri-Me Transportation, Inc. payroll account, but because she was an employee of Chemetco, Inc., Chemetco, Inc. was required to reimburse Tri-Me Transportation, Inc. for any amounts it paid to Geri Champion.

6. Geri Champion had requested health insurance from Tri-Me Transportation, Inc., which I attempted to authorize and obtain for her, but she was denied coverage under the plan that covered all of Tri-Me Transportation's employees based on the fact that she was not an employee of Tri-Me Transportation, Inc.

7. Geri Champion requested a raise from me but I was unable to authorize any such raise as she was not an employee of Tri-Me Transportation, Inc.

8. Geri Champion requested a raise from Chemetco, Inc. after I informed her that she was not an employee of Tri-Me Transportation, Inc., but rather Chemetco, Inc. and was subsequently granted her request from Chemetco, Inc.

Therefore, according to this affidavit, Chemetco actually paid for all work performed by Heinemeier on its behalf and, furthermore, only a Chemetco officer had the authority to authorize a raise for Heinemeier. Schenck's affidavit also states that after Heinemeier requested health insurance, he tried to obtain coverage for her from Tri-Me, but was told that she was not a Tri-Me employee. Importantly, Chemetco conceded at oral argument that Heinemeier subsequently obtained health insurance through a plan offered by Chemetco.

As demonstrated above, both Chemetco and Tri-Me exercised control over different facets of Heinemeier's job responsibilities and benefits. This dual control was not lost on plaintiff in that she does not appear to have a clear understanding of which defendant hired and employed her during the relevant time period. For example, at her deposition, she testified:

Q: When were you first employed after graduating from [school]?

A: That's when--my job that I got after [school] was with Tri-Me.

Q: When did you become employed with Tri-Me?

A: It was March 1st of '88 . . .

Q: And you continued your employment with Tri-Me until 1994, is that correct?

A: Right.

Q: What were your duties while employed at Tri-Me?

A: Well, I was hired at Chemetco to do an audit of Chemetco's freight bills, and that was my job.

[Emphasis added].

Many of the documents that might help shed further light on the disputed nature

of Heinemeier's employment relationship should be contained in her personnel file. During the course of this litigation, Heinemeier served discovery requests on both Chemetco and Tri-Me (who are represented by the same counsel) seeking the production of her personnel file. In response to plaintiff's request for her file, Tri-Me responded: "Defendant, Tri-Me Transportation, Inc. is unable to locate the personnel file of Geri Heinemeier." Chemetco did not respond to the plaintiff's request to produce her personnel file.

D.  Procedural History

On September 9, 1994, plaintiff initially filed charges against Chemetco with the United States Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR) asserting both sexual harassment and age discrimination. In the charges, Heinemeier alleged:

Dave Hoff, President of Chemetco, told me I was discharged for poor work performance [but] I believe I was discriminated against because of my sex [and] replaced by a younger employee . . . in violation of the Age Discrimination in Employment Act of 1967.

Heinemeier amended these charges on February 12, 1996, and identified Tri-Me as an additional employer/defendant. On March 20, 1996, the EEOC issued a right-to-sue letter. On June 20, 1996, plaintiff filed suit against Chemetco, Tri-Me, and United Freight Express, Inc. (United Freight) in the United States District Court for the Southern District of Illinois. On September 23, 1996, the trial court granted Heinemeier's motion to voluntarily dismiss the claims against United Freight, leaving only Chemetco and Tri-Me as defendants.

On April 30, 1998, Chemetco and Tri-Me filed a motion for summary judgment. In this motion, Chemetco contended that it was not Heinemeier's employer and that the allegations contained in her complaint were insufficient to establish age discrimination, quid pro quo sexual harassment, or a hostile work environment claim. Judge Paul E. Riley granted the motion on June 8, 1998, and wrote:

The record before this Court (including Tri-Me's payroll records, Heinemeier's W-2 forms, Hoff's affidavit, the apartment application, and much of Heinemeier's own deposition testimony) establishes that Tri-Me (not Chemetco) employed Heinemeier. Accordingly, Heinemeier cannot prevail on her Title VII or ADEA claims against Chemetco. No genuine issue of material fact remains as to Heinemeier's claims against Chemetco, and Chemetco is entitled to judgment as a matter of law on those claims.

In the same order, Judge Riley denied Tri-Me's motion for summary judgment and scheduled a trial to begin on July 6, 1998, on the Title VII retaliation charge against Tri-Me. However, two weeks later, Tri-Me filed for Chapter Seven Bankruptcy protection thereby staying the impending trial. On November 18, 1998, the bankruptcy stay was lifted and, one week later, this case was reassigned to Judge David Herndon of the Southern District of Illinois. On March 1, 1999, plaintiff filed a motion requesting that JudgeHerndon reconsider the summary judgment previously entered in favor of Chemetco by Judge Riley. On April 23, 1999, Judge Herndon issued an order stating "that the order of June 8, 1998, is not clearly erroneous and therefore DENIES the plaintiff's request for relief from it."

The case then proceeded to a bench trial before Judge Herndon on October 8, 1999, wherein Tri-Me was neither present nor represented by counsel. On March 10, 1999, Judge Herndon entered judgment against Tri-Me in the total amount of $411,310.00. Tri-Me does not appeal from this judgment. Rather, there is only one issue on appeal: did the district court appropriately enter summary judgment for Chemetco after determining that Heinemeier was not employed by Chemetco?

II.  DISCUSSION

Title VII prohibits an employer from discharging or discriminating against an individual's employment relationship on the basis of that individual's sex. 42 U.S.C. sec. 2000e-2(a)(1); Alexander v. Rush North Shore Medical Center, 101 F.3d 487, 491 (7th Cir. 1996). Similarly, the ADEA prohibits an employer from discriminating against an individual with

respect to the terms of her employment based on the individual's age. 29 U.S.C. sec. 623(a); Mills v. First Federal Savings & Loan Association of Belvidere, 83 F.3d 833, 840 (7th Cir. 1996). As noted above, the trial judge dismissed Chemetco as a defendant after finding that Chemetco was not Heinemeier's "employer" for purposes of either Title VII or the ADEA.

A.   Standard of Review

   We review the district court's grant of summary judgment de novo, viewing the record and all reasonable inferences drawn from the record in the light most favorable to Heinemeier. Sample v. Aldi, Inc., 61 F.3d 544, 546 (7th Cir. 1995). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "This standard is applied with added rigor in employment discrimination cases where intent and credibility are crucial issues." Sample, 61 F.3d at 547 (internal quotations and citations omitted).

B.   Economic Realities Test

   When facing questions regarding the employee-employer relationship under Title VII or the ADEA, we "look to the 'economic realities' of the relationship and the degree of control the employer exercises." Knight v. United Farm Bureau Mut., 950 F.2d 377, 378-80 (7th Cir. 1991)./3 In this case, the record reveals that Tri-Me and Chemetco shared control over Heinemeier and that the economic realities of her relationship with these companies is mixed. For example, Tri-Me's payroll records, Heinemeier's W-2 forms, and Heinemeier's apartment application all support the district court's finding that Tri-Me was Heinemeier's employer.

   On the other hand, there is also material evidence supporting plaintiff's claim that she was employed by Chemetco. Initially, Chemetco admits that the plaintiff-appellant received health insurance from a plan offered through Chemetco. Although Heinemeier has failed to introduce any documents detailing the exact nature and scope of Chemetco's plan, it is common knowledge that most

employer-sponsored health insurance plans limit participation to company employees and their families./4 Thus, Heinemeier's participation in the health insurance plan implies that she was a Chemetco employee. Additionally, Schenk's affidavit states that at least one of the "economic realities" of Heinemeier's employment, the responsibility for determining her salary, was controlled by Chemetco, not Tri-Me.

We are also of the opinion that Chemetco's and Tri-Me's joint failure to produce a copy of Heinemeier's personnel file is curious, and supports a determination that Chemetco was her employer./5 This is because, under Illinois law, Chemetco's failure to supply a copy of the file or a "reasonable excuse" for its non-production entitles the plaintiff to a jury instruction that allows the jury to infer that the contents of the personnel file would be adverse to Chemetco. Illinois Pattern Jury Instruction 5.01. A jury could reasonably conclude that the missing personnel file, which should be the key piece of evidence at a trial where the identity of plaintiff's employer is the main issue, might very well have been the "smoking gun" favoring Heinemeier.

We are of the opinion that a jury should have determined whether Chemetco was, in fact, Heinemeier's employer. Accordingly, we REVERSE and REMAND this case for further proceedings consistent with this opinion.

/1 Our recitation of the history of this matter is limited to the facts regarding the identity of Heinemeier's employer, the only issue on appeal. We do not discuss the nature of Heinemeier's charges in detail, but note for the record that Heinemeier alleges that she was subjected to a hostile work environment and forced to have non-consensual sexual intercourse with her supervisor, Juan Mena.

/2 The identity of Heinemeier's employer is the only issue in this case. As discussed in great detail below, we do not express an opinion as to whether she was employed by Chemetco, Tri-Me, or both companies. Nothing in the recitation of facts should be inferred as an indication that this court holds Heinemeier to have been employed exclusively by either Chemetco or Tri-Me.

/3 The five factors identified in Knight were:

(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, andmaintenance operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

Alexander, 101 F.3d at 492 (internal quotation omitted).

/4 In fact, to do otherwise may be in violation of ERISA.

/5 There are obviously a number of reasonable explanations that might account for a corporation losing business records that are relevant to litigation, including Heinemeier's file. However, Chemetco has not proffered any such explanation to date and its failure to do so is troubling especially in light of: (1) the close ties between Chemetco and Tri-Me; and (2) Tri-Me's decision to file for bankruptcy on the heels of having its motion for summary judgment in this case denied by the district court.