In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1680

NORA CHAIB,

*Plaintiff-Appellant*,

*v.*

STATE OF INDIANA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 11-cv-724-TWP-MJD — **Tanya Walton Pratt**, *Judge.*

ARGUED NOVEMBER 15, 2013 — DECIDED FEBRUARY 24, 2014

Before FLAUM and HAMILTON, *Circuit Judges*, and KAPALA,
*District Judge*.[*]

KAPALA, *District Judge*. Appellant, Nora Chaib, sued her
former employer, the State of Indiana, alleging employment
discrimination and retaliation. In particular, Chaib, who is a

---

[*]  The Honorable Frederick J. Kapala of the United States District Court for
the Northern District of Illinois, sitting by designation.

female United States citizen of French national origin, alleges
that, while working as a corrections officer for the Indiana
Department of Correction ("IDOC"), she was subjected to
discrimination and a hostile work environment on the basis of
her gender and national origin in violation of Title VII, 42
U.S.C. § 2000e *et seq*. Chaib also claims the IDOC retaliated
against her when she complained of her co-workers' alleged
harassment. The district court granted summary judgment to
the IDOC on all of Chaib's claims, which she has appealed to
this Court. For the reasons that follow, we affirm.

## I. BACKGROUND[1]

Chaib was born in France in 1957. In 1986, she married an
American and immigrated to the United States. She became a
naturalized citizen in 1991. In late 2008, after six weeks of
training at another corrections facility, Chaib began work at the
Pendleton Correctional Facility ("PCF"), which is a maximum
security prison. During her six-month probationary period,
corrections officer Van Dine was assigned to be Chaib's field
training officer.

According to Chaib, Van Dine began making sexually
offensive remarks to her almost immediately. Chaib identified
three such remarks: Van Dine allegedly told her that he and his
wife were interested in "threesomes" and asked if Chaib was
likewise interested, asked her if her nipples were hard in the
cold, and asked her whether she squatted or bent over to pick
up objects from the floor. In his deposition, Van Dine admitted

---

[1]  Unless otherwise specified, the facts set out herein are drawn from
Chaib's deposition testimony and her other evidence.

to discussing threesomes with another co-worker while Chaib was present, but denied making the comment to her. Likewise, he admitted making a comment about his own nipples being hard to a co-worker in Chaib's presence, but did not address the question to her. There was no mention by Van Dine of the alleged squatting or bending over remark.

Shortly after the first remark, Chaib complained to Van Dine about his behavior. Van Dine ceased training Chaib from that point forward, although Chaib alleges that she still worked with him regularly and he continued to make harassing comments. When pressed at her deposition to describe the further harassment, Chaib testified that Van Dine criticized her work performance and instructed her to do her job. Chaib also testified that Van Dine made disparaging remarks about her French heritage, about French people in general, and called her a "snitch." At no point during her training did Chaib bring Van Dine's behavior to the attention of any supervisor at the IDOC.

Chaib completed her probationary period on May 11, 2009, and was granted permanent status at PCF. Chaib alleges that she did not receive any further training after Van Dine removed himself as her training officer and, consequently, the training during the probationary period was insufficient. However, Chaib admitted that she never asked anyone to give her additional training. Instead she learned by watching the other officers do their work[2]. In deposition testimony, Van

---

[2] In the district court briefing, Chaib admitted she later received the training from a different officer in early 2010.

Dine stated Chaib was regularly sent back to him for retraining because she had trouble with her shift supervisors, and that she received more training than what was required.

On July 15, 2010, Van Dine yelled at Chaib to do her job and pointed his finger in her face. After that incident, Chaib decided to file an internal personnel complaint with her supervisor referencing this latest encounter and the other assorted improper actions by Van Dine, claiming she had been subjected to treatment that "bordered" on sexual harassment. In response, the IDOC engaged the Human Resources Department to conduct an investigation, which included interviewing Chaib, her supervisor Captain Taylor, Van Dine, and other officers mentioned by Chaib. Angela Smith, the Human Resources Manager, completed the investigation on July 29, 2010, and issued a written report. In that report, Smith stated that she found no evidence to substantiate Chaib's claims of harassment, but noted that there was evidence that Van Dine had engaged in conduct unbecoming a corrections officer. Accordingly, she recommended that Van Dine be reprimanded. However, Smith also stated that in the course of her investigation, she found evidence that Chaib herself had engaged in conduct unbecoming an officer, including referring to co-workers as "stupid Americans," threatening co-workers that she would file sexual harassment charges which Smith determined were unwarranted, endangering her co-workers through negligent actions for which she had been previously disciplined, and being confrontational and defensive when given job directions. Accordingly, Smith also recommended that Chaib be reprimanded. Both recommendations were apparently accepted, as both Chaib and Van Dine received

reprimands for their conduct. After Van Dine's reprimand, he ceased any harassing behavior.

Throughout her two-and-a-half years of employment, Chaib also had a series of encounters with her other co-workers which she identified as discriminatory. Some of these involved the co-worker showing overt animus towards her on account of her gender or French national origin, while others involved criticism or negative feedback concerning Chaib's work performance without having any overt connection to her gender or national origin but which Chaib nevertheless believed were discriminatory. Out of this series of encounters, three were reported to her employer, and following each report she had no further problems with the co-worker involved in the incident. Chaib admits that the remaining encounters went unreported to her superiors.

During her employment at PCF, Chaib received two work evaluations. At the end of 2009, Chaib received an annual evaluation that stated she was overall meeting the expectations of her job. However, she received a "does not meet" expectations rating for "organizational commitment" due to a violation of IDOC's leave policy during the year. Chaib made no objection to this evaluation. Chaib's evaluation for 2010 found that she was not meeting expectations on a number of grounds due to assorted disciplinary actions. It also noted that Chaib had inadequate knowledge of her duties, displayed difficulty with interpersonal relations, had difficulty completing tasks assigned by her supervisors, showed poor judgment, and failed to adequately perform in stressful and emergency situations. Chaib refused to sign the 2010 evaluation when it was presented to her and alleged that the

poor performance evaluation was due to gender and national origin bias.

On August 8, 2010, Chaib filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which she later amended on October 7, 2010, complaining about her treatment at PCF. Chaib followed her EEOC filings with a March 2011 complaint to the Indiana State Personnel Department denouncing her 2010 evaluation and demanding that it be redone. Bruce Baxter, the Director of Employee Relations for the department, investigated the matter and wrote a letter to Chaib stating that her "appraisal was properly administered" and that its result was proper.

In April 2011, Chaib requested a transfer to the Correctional Industrial Facility ("CIF"), which is adjacent to but outside the walls of PCF and holds inmates convicted of less serious crimes. The interview panel recommended hiring Chaib, but she ultimately was denied the transfer. Instead, CIF hired seven others, including two women.

Also in April 2011, Chaib was working in the "chow hall" when an inmate groped her. In her initial report on the incident, and initially in her deposition, Chaib indicated that the inmate grabbed her buttocks with one hand as he walked by her. In another portion of her deposition, she stated instead that he "put his finger inside my pants – like through my pants, through my pants grabbed me, and I felt his hand inside me" and also that he grabbed her vagina. Nevertheless, Chaib immediately seized the inmate, cuffed him, and escorted him to a holding cell after which she filed a report. The inmate was given a disciplinary hearing at which Chaib was not called to

testify, but a video of the incident was shown, her report was reviewed, and other testimony was taken. His offense was downgraded from a charge of sexual assault on an officer to a charge of making sexual gestures. The inmate was reprimanded and placed back in the general population, in which Chaib also worked.

In response to this episode, in May 2011, Chaib requested time off under the Family and Medical Leave Act ("FMLA") based on stress, anxiety, and depression. On July 29, 2011, while still on FMLA leave, Chaib tendered a two-week notice and resigned from her position with the IDOC. In October 2011, Chaib filed a second EEOC complaint expanding on her previous complaints about her problems at PCF. Thereafter, Chaib filed the instant action.

## II. DISCUSSION

### A. Standard of Review

We review an order granting summary judgment *de novo*. *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In evaluating such a motion, the court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Hemsworth*, 476 F.3d at 490. The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. *See id*. "If a party moving for summary judgment has properly supported his motion, the

burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (emphasis and quotation marks omitted). The nonmoving party need not meet, in the court's eyes, the preponderance of the evidence standard, but must still provide more than a "mere scintilla" of evidence to show that there is a genuine issue of material fact. *See Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (7th Cir. 2010).

## B. Disparate Treatment Claims

Chaib grounds her claims for gender and national origin discrimination on a disparate treatment theory. To prevail, Chaib must have evidence to show that she was subjected to intentional discrimination based on either her gender or national origin. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012) ("Disparate impact claims require no proof of discriminatory motive and involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. By contrast, differential treatment claims, also known as disparate treatment claims, require plaintiffs to prove discriminatory motive or intent." (citation and quotation marks omitted)); *see also Hildebrandt v. Ill. Dep't of Nat'l Resources*, 347 F.3d 1014, 1029 (7th Cir. 2003). Although traditionally plaintiffs have sought to show the existence of that discriminatory motive through the "direct" and "indirect" methods of proof, recently this Court has suggested we move away from the "ossified direct/indirect paradigm in favor of a simple analysis of whether a reasonable jury could infer prohibited

discrimination" and an adverse employment action based on that discrimination. *Perez*, 731 F.3d at 703 (quotation marks omitted) (collecting cases). While this approach is being considered, the Court has continued to look at the factors embodied in the traditional tests to determine whether plaintiff has succeeded in creating a genuine issue of material fact. *See id.* at 703–11.

Under the indirect method, a plaintiff has to first establish a prima facie case by providing evidence that "(1) she is a member of the protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Id.* at 704 (quotation marks omitted). If the plaintiff meets this burden, the burden then shifts to the employer to "introduce a legitimate, nondiscriminatory reason for the employment action." *Id.* (quotation marks omitted). If the employer does so, the burden returns to the plaintiff to show that the proffered reason was a pretext. *Id.*

Under the direct method, a plaintiff can offer direct evidence of discrimination, which is typically "an outright admission by the decisionmaker that the challenged action was undertaken because of the plaintiff's [protected class]." *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012) (quotation marks omitted). If a plaintiff lacks direct evidence, the plaintiff can proceed "under the direct method using circumstantial evidence." *Perez*, 731 F.3d at 710. To prevail under that theory, a plaintiff has to "construct a convincing mosaic" that would permit a jury to infer intentional discrimination. *Id.* (quotation marks omitted). Typically that mosaic includes three categories

of evidence: (1) "suspicious timing, ambiguous statements oral or written, and other bits and pieces from which an inference" of discrimination could be drawn; (2) "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently"; or (3) "evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* at 711 (quotation marks omitted).

Chaib does not argue under either of the historical tests. Instead she subscribes to the view that we should "look away from the intricacies of the direct and indirect methods here and focus on the summary judgment evidence as a whole," *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 680 (7th Cir. 2012). Nevertheless, analyzing the facts under any of the methods currently in use, Chaib has not presented sufficient evidence that would allow a reasonable jury to find discrimination based on disparate treatment.

### 1. Adverse Employment Action

The district court found that Chaib failed to set out an adverse employment action which could have resulted from any employer discrimination. The requirement that a plaintiff show she suffered an adverse employment action as a result of her employer's alleged discrimination is an element of any Title VII claim, regardless of whether the claim is reviewed under the traditional direct/indirect framework or the less rigid framework our cases have recently suggested. *See Morgan v. SVT, LLC*, 724 F.3d 990, 995–97 (7th Cir. 2013). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Nagle v. Vill. of Calumet Park*, 554

F.3d 1106, 1116 (7th Cir. 2009) (quotation marks omitted). "[A]lthough the definition of an adverse employment action is generous, an employee must show some quantitative or qualitative change in the terms or conditions of his employment or some sort of real harm." *Id.* at 1116–17 (quotation marks omitted). In an effort to show that the district court erred, Chaib identifies the following as adverse employment actions resulting from her employer's alleged discrimination: (1) that she was denied training, (2) that her request to transfer to CIF was rejected, and (3) that she received a poor evaluation.

This Court has concluded that a failure or refusal to train an employee based on that employee's membership in a protected class is an adverse action. *See, e.g.*, *Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000). Here, Chaib claims that she had a sexually charged personal conflict with Van Dine, and because of this he did not provide the training she was allegedly due during her probationary period. However, Chaib admits she never told her employer that she was not receiving the required training from her co-worker Van Dine. Even in her personnel complaint against Van Dine, she did not mention her lack of training. Her employer cannot be said to have taken an adverse action against her of which it was unaware. Furthermore, in her briefing to the district court, Chaib admitted that she *did* receive all of the probationary training, just not until February 2010 under an officer named Tim Dinkins. (*See* Pl. Br. in Opp'n to Summ. J. 30 ("The training that all employees must have completed before permanent status is granted was not given to Plaintiff *until February 2010 by Tim Dinkins after Van Dine did not want to train Plaintiff.*" (emphasis

added)).) Thus, even if the employer somehow gained notice of Chaib's lack of training—and the record is silent on when or if that happened—the issue was remedied and Chaib failed to provide any evidence that any delay between that notice and the receipt of training caused any change in the terms or conditions of her employment. Accordingly, even under her own version of the facts, Chaib received all the training she was due and her employer had no notice to the contrary.

Chaib next argues that the refusal to transfer her to CIF was an adverse employment action. Chaib concedes that her duties, salary, and career opportunities were not affected by the failure to transfer her. Instead, she contends that the transfer would have resulted in a significant change in the terms of her employment, notwithstanding her concession, because she would have (1) worked with inmates imprisoned for less serious offenses who "would have been easier to work with" and (2) been out of the hostile work environment at PCF.

There is insufficient factual support in the record for the first contention because there is no evidence that inmates at CIF are easier to work with. The only information offered by Chaib concerning that facility is her statement that the inmates housed there have been convicted of less serious offenses, but Chaib points to no evidence in the record from which any further conclusions can be drawn. Although it is plausible to infer that an inmate held at a less-secure prison may be more docile, pose less danger, and cause less stress, it is equally plausible to infer that there are fewer institutional restraints on the prisoners and a greater inmate-to-staff ratio which, notwithstanding Chaib's request to be transferred, invites the inference that working at CIF would be more difficult and

culminate in an increase of danger and stress[3]. Without concrete evidence showing that the terms and conditions of working at CIF are superior, rather than relying on bare conjecture, Chaib has not met her burden. Additionally, just because Chaib subjectively considered a transfer to have been a more ideal fit or personally advantageous does not render its rejection adverse. *See Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001) ("We have noted, however, that not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." (alteration and quotation marks omitted)).

The second contention presumes the existence of a hostile work environment, which, as set out below, fails as a matter of law. *See infra* Section II.C. Thus, since the transfer would not have resulted in a tangible benefit to Chaib, and her subjective preference for the job is not sufficient to show an adverse

---

[3] Plaintiff's evidentiary burden on this issue is consistent with the normal summary judgment procedure—Chaib should simply have come forward with some evidence to support her presumption that working at CIF would be materially superior in some measurable way to working at PCF. For example, she could have offered affidavit evidence from at least one guard who had worked at both, other statistical data which would permit an inference that CIF was safer or less stressful, or any other evidence which would permit a jury to find in her favor. Nevertheless, Chaib has advanced no evidence on this point. *See Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) ("We often call summary judgment the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely." (citations omitted)).

employment action, the employer's refusal to transfer her cannot be a basis for liability.

Finally, Chaib cannot show an adverse employment action by pointing to her 2010 poor performance evaluation. This Court has never held, and in fact has explicitly rejected, that poor performance reviews alone can be the basis for a finding of an adverse employment action by the employer. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441–42 (7th Cir. 1996) ("Looking to the facts of the case before us, in the light most favorable to [plaintiff], we can only conclude that the evaluations alone do not constitute an actionable adverse employment action … ."); *see also Oest*, 240 F.3d at 613. Chaib cites to generic language from other cases, but presents no persuasive argument for overruling *Smart* or *Oest*, or differentiating the performance review in this case from those in *Smart* or *Oest*. Because Chaib has failed to identify an adverse employment action, her claims for gender and national origin discrimination fail and the district court correctly granted summary judgment on those claims.

## 2. Proof of Discriminatory Intent

The district court additionally found that Chaib failed to sufficiently show the necessary discriminatory intent from her employer to prove Title VII discrimination. *See Hildebrandt*, 347 F.3d at 1029 ("Proof of intentional discrimination is required under a disparate treatment analysis." (quotation marks omitted)).

In its decision, the district court correctly noted that Chaib failed to identify any similarly situated individuals outside of her protected class who were treated more favorably. To create

an inference of discriminatory intent, the indirect method requires the identification of similarly situated comparators because "[a]ll things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination. The similarly situated prong establishes whether all things are in fact equal." *Perez*, 731 F.3d at 704 (alteration and quotation marks omitted). Here, Chaib has not shown that any non-female, non-French individual was subject to different treatment than the treatment of which she complains. None of the parties claim that similarly situated comparators were unavailable. The record makes it clear that PCF is a large maximum security facility which employs many corrections officers. We may safely conclude that this population included many individuals who were neither female nor of French national origin. Thus, without similarly situated comparators, no inference of discrimination arises and Chaib's disparate treatment claims fail under the indirect method.

Similarly, Chaib's claims do not pass muster under the direct method. She points out a number of actions she labels as adverse—the failure to train, refusal to transfer, and the poor performance evaluation—and certainly several incidents of boorish treatment by her co-workers, but she lacks any admission or statement by her employer, direct or ambiguous, that suggests that the actions she labels as adverse were motivated, even in part, on account of her gender or national origin. Instead, Chaib relies entirely on vague circumstantial evidence to show that she faced discrimination based on her gender or French national origin. However, even under the broad "convincing mosaic" direct test, Chaib fails to show any

sufficiently suspicious timing, differently treated co-workers, or any treatment from any decision maker at the IDOC which would permit a reasonable jury to make an inference of discriminatory intent.

Finally, even stepping back from the traditional tests into the broader totality-based view recently suggested by this Court, Chaib has not identified anything in the record not already covered by the traditional tests which would permit a reasonable jury to find that the adverse employment actions identified by Chaib occurred on account of her gender or national origin.

Therefore, because Chaib has also failed to provide sufficient evidence to link any such action to her gender or national origin, this Court affirms the district court's grant of summary judgment as to Chaib's claims for discrimination under Title VII based on disparate treatment.

### C. Hostile Work Environment

"Title VII prohibits the creation of a hostile work environment." *Vance v. Ball State Univ.*, 570 U.S. ___, 133 S. Ct. 2434, 2440 (2013). In order to prevail on such a claim, a "plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Id.*

To avoid summary judgment on a hostile work environment claim, a plaintiff must provide sufficient evidence to create a genuine issue of material fact as to four elements: (1) the work environment must have been both subjectively and objectively offensive; (2) her gender or national origin

must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 383 (7th Cir. 2012).

We need not address the first three prongs of the hostile work environment analysis, as the district court correctly determined that there is no basis for employer liability in any of the alleged incidents of harassment to satisfy the fourth prong. There is no dispute that in this case all of the harassment identified by Chaib came from co-workers rather than supervisors. An employer is only liable for harassment from an employee's co-workers if it was negligent in its response to the harassment. *See Vance*, 133 S. Ct. at 2439 ("Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions."). Here, there were only a few incidents of alleged harassment which Chaib brought to the attention of the IDOC: she complained about Van Dine's behavior and three other co-worker comments. After each of these complaints, however, Chaib had no further problems with any of those officers. Indeed, Chaib points to no evidence in the record which establishes that, after reporting a co-worker to her supervisors, she ever had a subsequent problem with that individual. No reasonable jury could say that her employer was negligent for failing to correct her co-workers' behavior when it apparently corrected all of the behavior she reported.

As to the inmate groping incident, this Court has previously held that an inmate's rape of a female correctional

facility employee can support a finding of a hostile work environment, but only where the employer was aware of the risk of the attack and was negligent in preventing it. *See Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 606 (7th Cir. 2006). In *Erickson*, this Court applied the standard used for protecting an employee against co-worker harassment to a circumstance where a female corrections employee (but not a guard) put her employer on notice by reporting the possibility of a future inmate sexual assault. *See id.* at 605–06. Here, however, Chaib has presented no evidence that her employer was aware of any threat greater than the threat that is inherent to the position of corrections officer posed by the inmate who assaulted her. Chaib, instead, presses that the IDOC was negligent for releasing the inmate back into the general population, where she worked, without sufficient punishment[4]. The fact remains, however, that once the IDOC became aware of the harassment from the inmate, it disciplined him, albeit not as harshly as Chaib believes was appropriate, and he never repeated that behavior or any other harassing behavior towards Chaib. Nor was the response so lax such that any other inmate assaulted, or otherwise acted inappropriately towards, Chaib (and Chaib pointed to no place in the record where she expressed any fear of future assault). Although Chaib did not work at the IDOC

---

[4] The record is not entirely clear as to how much punishment the inmate received. It appears, based on the documents concerning his hearing, that he was held in segregation for at least two days. However, Chaib testified that he was never held in segregation, although Chaib failed to set out the basis for her personal knowledge for that testimony. Nevertheless, whatever may have been his punishment, it is clear Chaib believes it to have been insufficient.

for long following the inmate's discipline, no reasonable jury could find that the IDOC was negligent in how it addressed the problem when its response was successful in eliminating the behavior.

In summary, Chaib has failed to create a genuine issue of material fact as to her hostile work environment claims because, as the district court correctly found, she failed to set out a basis for employer liability. Consequently, the district court's grant of summary judgment as to the hostile work environment claims is affirmed. Finally, since Chaib has not shown that her employer was responsible for a hostile work environment, she has also failed to offer sufficient evidence to support her claims of constructive discharge, which requires a stronger showing. *See Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 639 (7th Cir. 2009).

## D. Retaliation

This leaves only the district court's grant of summary judgment as to Chaib's claim for retaliation. In addition to forbidding discrimination directly, Title VII also forbids employers from retaliating against employees by taking adverse employment actions for complaining about prohibited discrimination. *See Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007). The showing a plaintiff must make to set out an adverse employment action required for a retaliation claim is lower than that required for a discrimination claim; a plaintiff must only show that the employer's action would cause a "reasonable worker" to be dissuaded from making or supporting a charge of discrimination. *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks

omitted). Even with that lower standard, "petty slights, minor annoyances, and simple lack of good manners" do not suffice. *Id*. However, the Supreme Court has recently provided that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test" applicable to gender or national origin discrimination claims. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. ___, 133 S. Ct. 2517, 2533 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*.

There is no question that Chaib engaged in protected activity in her complaints to her employer, but she has not set out the evidence necessary to meet the causation requirement. Although she complained of various forms of discrimination to her employer on a number of occasions, none of the adverse employment actions identified by plaintiff—the alleged failure to train, the denial of her transfer to CIF, and the poor performance review—have been tied to those complaints in any way. Chaib admitted that she never complained about her lack of training to her supervisors. There is nothing at all in the denial of her transfer to CIF that suggests it was as a result of her complaints. And the poor performance review lacks any indication that it would not have been issued but for her complaints (although it does have some ambiguous statements concerning interpersonal relationships).[5]

---

[5] The performance review for the year 2010, wherein Chaib was given an overall "Does Not Meet Expectations" rating, stated that she "displays

(continued…)

We, however, note an additional argument for retaliation which can be based on the July 29, 2010 investigation report by Ms. Smith. Following Smith's recommendation in the report, both Chaib and Van Dine were reprimanded for their behavior as unbecoming an officer. However, even though the report explicitly considered Chaib's threats of reporting others for sexual harassment as part of its recommendation for the reprimand, that reprimand is insufficient to serve as an adverse employment action. *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009). "Even under the more generous standard that governs retaliation claims," a reprimand "without more" is not an adverse employment action. *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 902 (7th Cir. 2003). Here, as in *Johnson*, Chaib "made no effort to show how it affected [her] employment from that time forward." *Id*. Nor has she made any argument explaining how a reasonable worker would be dissuaded by the reprimand from complaining about discrimination. Therefore, she has not carried her burden to show that a reasonable jury could find that the reprimand was materially adverse. Thus, the Court affirms the district court's grant of summary judgment as to Chaib's retaliation claim.

---

(…continued)

difficulty with interpersonal relations which effects [sic] her ability to preform [sic] as a team member" and "displays difficulty with interpersonal relations which effects [sic] her ability to preform [sic] as a team." But Chaib falls far short of establishing the causation threshold required to link those comments to her protected activities.

### III. CONCLUSION

The district court correctly granted summary judgment to defendant as to each of Chaib's claims. Therefore, we AFFIRM.