In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2707

FRANK BURKS AND CORNELIUS L. JONES, JR.,

*Plaintiffs-Appellants*,

*v.*

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-08164 — **Maria Váldez**, *Magistrate Judge*.

ARGUED FEBRUARY 12, 2015 — DECIDED JULY 13, 2015

Before EASTERBROOK, KANNE, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*. Appellants Frank Burks and Cornelius Jones were, at the relevant times, employed by the Union Pacific Railroad Company ("Union Pacific"). They claim that Union Pacific denied them the opportunity to take a test that was required for promotion, and did so based on impermissible retaliation. Burks and Jones each argue that Union Pacific retaliated against them for having engaged in

protected activity—namely, filing complaints of racial discrimination. The district court granted summary judgment for Union Pacific. For the reasons explained below, we affirm the judgment of the district court.

## I. BACKGROUND

Burks and Jones were hired as "Signal Helpers" by Union Pacific. They both reported to orientation in Boone, Iowa, on January 3, 2011. During orientation, they were informed that they would be employed through December 31, 2015, or until the company "moved in a different direction." A Signal Helper's job duties included construction, installing wire, digging trenches, and climbing poles. The position carried a 90-day probationary period, and both Burks and Jones were subject to a collective bargaining agreement that covered the terms and conditions of their employment. Burks and Jones were the only African-American members of their Signal Helper class.

### A. Employment History

#### 1. Burks

Following orientation, Burks was assigned to Zone 5,[1] where he reported to foreman Chad Smith. Burks was assigned primarily to dig trenches. On February 9, 2011—twenty days into Burks's employment and probationary period—Manager of Signal Construction Morgan Riley directed Chad Smith to terminate Burks's employment. Chad Smith stated to Burks that "it wasn't working out."

---

[1] Union Pacific appears to divide its rail areas into numbered geographic zones, but the parties do not offer background information on this topic.

In April 2011, Burks lodged a complaint with Melissa Schop in Union Pacific's Equal Employment Opportunity department alleging racial discrimination in connection with his termination. After investigating the complaint, Schop found no evidence that Burks had been fired because of his race. She did, however, conclude that he had not been properly coached or given an opportunity to improve his performance before his employment was terminated. She offered Burks reinstatement in exchange for signing a general release that included a new 90-day probationary period. Burks signed the form and returned to work on May 24, 2011.

Burks was again assigned to Zone 5. He reported to foreman George Hoy, who in turn reported to Riley. Burks worked for Hoy for seven days before requesting a transfer. He was transferred to Zone 4 and reported to Rod Storbeck, with the same job responsibilities. Burks completed his probationary period on August 23, 2011. He was later notified that Union Pacific abolished the Signal Helper position, effective October 10, 2011. He was subsequently furloughed.

### 2. Jones

Like Burks, Jones was assigned to Zone 5 following his orientation, reporting to foreman Clay Smith. He was later assigned to Zone 4, reporting to foreman Jeremy Bates, and then returned to Zone 5, reporting once again to Clay Smith. Jones primarily dug trenches. He completed his probationary period in April 2011.

On June 8, 2011, Jones called Schop to report a comment that he perceived as racially discriminatory. Referring to either a gate or a truck, Clay Smith had commented that it was

"working like a striped monkey" or "running like a striped-ass monkey." Jones agrees that the remark was not made directly to him or another person, but it was made in his presence. He perceived the comment to be a derogatory reference to his biracial children.

After investigating the complaint, Schop concluded that the comment was not racially motivated. Jones claims that after he made the complaint, Clay Smith would only communicate with him through intermediaries.

Like Burks, Jones was notified that the Signal Helper position was being abolished, and he was subsequently furloughed.

### B. Plaintiffs' Applications for Promotion

A Signal Helper could, through a multi-step process, become eligible for promotion to the position of Assistant Signal Person.[2] First, he must successfully complete his 90-day probationary period. Second, he must apply for an open Assistant Signal Person position. Third, he must be invited to take the "Skilled Craft Battery Test" (the "SCBT"). After passing the SCBT, he would be considered eligible for promotion to Assistant Signal Person.

The plaintiffs' claims center on whether they were denied the opportunity to take the SCBT as a result of impermissible retaliation. So we delve rather deeply into the facts sur-

---

[2] The duties of Signal Helpers and Assistant Signal Persons overlapped to some degree. Assistant Signal Persons, however, could perform skilled tasks, such as connecting electrical wiring, that Signal Helpers were not permitted to perform.

rounding the SCBT and Union Pacific's promotion procedures. It is worth noting at the outset, however, that neither the plaintiffs' briefs nor materials in the record below fully explain Union Pacific's promotion procedures. So gaps exist in the factual background as it has been presented to us.

It is uncontested that both Burks and Jones passed their 90-day probationary periods, so both were eligible to apply for open Assistant Signal Person positions. According to Schop, whose account of the application process appears to be uncontested, employees could apply in two ways.

Under what we'll term the "external" method, the employee could submit an application through Union Pacific's public website. The company listed its open Assistant Signal Person positions in every geographic zone and "seniority district"[3] on the site. The employee would then apply separately to each open position that was of interest—say, a position in Addis, Louisiana, or in Waco, Texas. The applicant could apply for positions in any seniority district through this method.

Under the "internal" route, the employee could apply into a centralized applicant pool. That pool would be open only to current Union Pacific employees. If an Assistant Signal Person position became available in the applicant's seniority district, the employee would be invited to take the SCBT. Applications to the pool eventually expire, after which time an applicant must reapply if he remained interested in taking the SCBT.

---

[3] The term "seniority district" appears throughout the record, but remains undefined. The parties shed no light on its meaning.

An employee could elect to apply through either or both of the application methods. Under either method, it is unclear whether any additional "screening" steps were taken by Union Pacific between an application's submission and any subsequent invitation to take the test. Some record information suggests that someone—either a human resources official or someone else—would review the applicants to make sure they met all listed qualifications. Other evidence suggests that applicants must have obtained positive referrals from their current managers in order to be considered, implying that some form of review occurred after the initial submission. In any event, the plaintiffs provide no information about this portion of the promotion process, so the factual description on this point remains absent.

### 1. Burks

After Burks completed his probationary period in August 2011, he spoke to foreman Storbeck about his promotion potential to Assistant Signal Person. According to Burks, Storbeck made a phone call to an employee named Nate Gutmann to ask how a signal helper could be promoted to Assistant Signal Person. Gutmann in turn asked another employee, Bernard Kachnowski, what actions were required. According to Burks, Kachnowski faxed a response to Gutmann, which was then sent to Storbeck, stating that "to be promoted, the signal helpers have to take a series of tests to see if they [*sic*] capable of learning electronic background."

The record suggests that Burks was mistaken about the form this communication took—it appears to have been an email exchange between Storbeck, Gutmann, and Kachnowski. In any event, the email stated substantially what Burks related—that the Signal Helpers must take a series of

tests to see if they were "capable of learning the electronic part of being a Signalman." In that email, Kachnowski also stated that "Jesse [Stearns] can call someone from HR to set up the testing."

From this point, the facts of Burks's application process become muddled. In his brief, Burks claims that he believed that Stearns was setting him up with HR to take the SCBT. He cites to his own deposition testimony in support of that contention, but the cited testimony does not indicate whether Burks was at the time aware of the communications passing between Storbeck, Gutmann, and Kachnowski. Nor does it indicate that anyone told Burks that the SCBT was being arranged for him.

Burks also claims that he was not informed that he was required to apply for an open position in order to be invited to take the SCBT, either prior to or immediately following his 90-day probationary period. He states that he was informed of the need to apply for an open position only at the time that he was notified that his Signal Helper position was being abolished. The record indicates, however, that in either June or July, Burks became aware that other employees from his Signal Helper class had been told to go online to apply to open positions.

According to Union Pacific, and this appears to be uncontested by Burks, Burks applied for an open Assistant Signal Person position in October of 2011. He applied only via the "internal" application method, joining the "pool" of eligible applicants. Union Pacific claims that no positions became available in Burks's seniority district, and his application to the pool expired in January of 2012. Burks did not reapply, and he was never invited to take the SCBT.

### 2. Jones

As for Jones, recall that he completed his probationary period in April 2011. Jones claims that he submitted an online application for open positions, apparently using the internal method, in May 2011. After hearing nothing from the railroad (or being told there were no positions available—the evidence is contradictory on this point), he contacted his union representative, Harry Doucet, for help. Doucet in turn contacted Union Pacific by email. Employee Tonya Eggspuehler responded that there was no application on file for Jones. She provided by email the link through which Jones should apply to the pool. Doucet told Jones to reapply on or about June 28, 2011, the same day he communicated by email with Eggspuehler. Jones did not apply to the pool until September 2011, and his application expired in January 2012. He did not reapply, and he was never invited to take the SCBT.

### C. District Court Proceedings

Burks and Jones filed suit in the Northern District of Illinois alleging, among other claims, that Union Pacific retaliated against them for having engaged in protected activities, in violation of Title VII of the Civil Rights Act of 1964. They claimed that Union Pacific denied them the opportunity to take the SCBT, and thereby denied them a promotion. In Burks's case, he alleges that Union Pacific retaliated against him for having filed a racial discrimination complaint following his termination in February 2011. In Jones's case, he alleges retaliation for having filed the racial discrimination complaint against Clay Smith.

Following discovery, Union Pacific moved for summary judgment on all claims. Along with their response, the plaintiffs electronically filed a number of exhibits. Under Docket Number 71, the plaintiffs filed a series of documents numbered 1 through 9. Under Docket Number 72, the plaintiffs filed more documents, numbered 11 through 15. Those documents, however, were actually duplicates of several of the exhibits that had been filed as 1 through 9. No document numbered "10" was electronically filed, and at Docket Number 73, a second Exhibit 11 was filed.

This error resulted in several deposition transcripts never being electronically filed or served on opposing counsel: the depositions of Burks, Doucet, Riley, Schop, and Clay Smith. Hard copies of the depositions were included, however, along with copies of other documents that were delivered to the judge's courtroom deputy clerk. The court did not consider these depositions in conducting its summary judgment analysis.

The district court granted summary judgment to Union Pacific on all claims, including the retaliatory failure-to-promote claims. The court analyzed those claims under both the direct and indirect methods of proof and concluded that the plaintiffs put forward no evidence to show that Union Pacific prevented either applicant from applying for open positions or taking the SCBT. The court also found that the plaintiffs offered no facts showing that there were any open Assistant Signal Person positions during the time their applications were active. And finally, the court concluded that the plaintiffs offered no examples of other employees outside the protected class who were not better qualified but promoted during that time period.

The plaintiffs appeal the grant of summary judgment.

## II. Analysis

The plaintiffs argue that the district court erred in granting summary judgment because: (1) the court erroneously disregarded the deposition transcripts that the plaintiffs negligently failed to e-file; and (2) the plaintiffs established genuine issues of material fact regarding a retaliatory failure to promote.

We conclude that the plaintiffs have not raised any genuine issues of material fact regarding a retaliatory failure to promote, and they point to no evidence in the disregarded transcripts that would have created any genuine issues of material fact. Therefore, we need not decide whether the district court erred in disregarding the transcripts that were not properly e-filed.

### A. Standard of Review

We review a grant of summary judgment *de novo*, "reviewing the record and the inferences drawn from it in the light most favorable to the nonmoving party." *Grayson v. City of Chicago*, 317 F.3d 745, 749 (7th Cir. 2003). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B. Retaliatory Failure to Promote

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment … because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). In order to prove unlawful retaliation, Jones

and Burks may proceed under the familiar direct and indirect methods of proof. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006).

Under the direct route, they may provide either "smoking gun" or circumstantial evidence. Smoking gun evidence typically requires an admission of discriminatory intent. *See Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014). Individual pieces of circumstantial evidence, on the other hand, may be combined to raise an inference of discriminatory intent. Such circumstantial evidence may include "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly-situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014).

Under the indirect route, Jones and Burks must operate within the familiar burden-shifting approach. They must first establish a *prima facie* case of discrimination. In the retaliatory failure-to-promote context, they must show that: (1) they engaged in statutorily protected activity; (2) they applied for and were qualified for the positions sought; (3) they were rejected for those positions; and (4) the employer granted the promotions to others who did not engage in statutorily protected activity, and who were not better qualified than the plaintiffs. *See Carter v. Chicago State University*, 778 F.3d 651, 660 (7th Cir. 2015).

If they establish that *prima facie* case, the burden then shifts to Union Pacific to articulate a legitimate, non-discriminatory reason for the employment action. The burden then shifts back to Jones and Burks to prove that Union Pacific's stated reasons were pretextual. *Vaughn v. Vilsack,* 715 F.3d 1001, 1006 (7th Cir. 2013).

We discuss the appellants' claims in turn.

*C. Burks*

Under both the direct and indirect methods, Burks has not established a genuine issue of material fact regarding his retaliation claim, because he has not put forward any facts to show that Union Pacific denied him the ability to take the SCBT.

Burks appears to argue that he was denied the opportunity to take the SCBT on two separate occasions—first, when he thought his supervisor was arranging it for him; and second, after he submitted his internal application to the pool.

As for the first denial, Burks argues that he was "trying to take the test" in August 2011, after he had completed his probationary period. From the record, it appears that the only effort Burks made at that time to seek promotion was to ask his supervisor, Storbeck, about whether he might be promoted. Burks makes the repeated assertion that this constituted an "application" under the internal application procedure, and that the internal method did not require "applying through the internet." He asserts that any Union Pacific claims to the contrary are "less than truthful."

There are at least two problems with Burks's argument. First, he presents no evidence to support the contention that

merely speaking to a supervisor about promotion constituted an "application" under Union Pacific's procedures. Nor has he presented any evidence that the recommendation of a supervisor to another party—a human resources official or anyone else—would constitute an application. He repeatedly references a letter written by Schop as supporting his position, but it does nothing of the sort. The relevant portion of that letter simply stated that "[t]he second way to be promoted from a Signal Helper to an Assistant Signal Person is to go through the internal promotion process. In this case, Signal Helpers apply to a pool." It did not outline what procedures such an internal application would take, and it nowhere suggested that communicating interest to a supervisor would be enough.

Second, other evidence submitted by Burks shows that the "internal" application was, in fact, submitted via an online system. In an email responding to plaintiff Jones, for example, Eggspuehler confirmed that she didn't have an application on file for him. So she sent the hyperlink through which Jones could apply online. Eggspuehler stated, "I've included the link where he needs to put in his application. As you know, we are only posting a pool and they only have to submit their application once every six months." The "pool" language clearly refers to the internal method, as the external method required applicants to apply to each open job individually. Based on this record evidence, Burks's oral inquiry was not enough.

Burks next relies on the email communication between Storbeck, Gutmann, and Kachnowski to show that he was denied the opportunity to take the SCBT shortly after he completed his probationary period. In that email exchange,

Gutmann asks Kachnowski, "What are the steps needed to get the helpers into the assistant signalman training?" Kachnowski responds, "They need to take a series of tests to see if they are capable of learning the electronic part of being a Signalman. Jesse [Stearns] can call someone from HR to set up the testing." But other evidence—including, at least, Schop's account of the hiring procedures, and Riley's deposition testimony—suggests that Kachnowksi's statement about Stearns was incorrect. Burks argues that this statement by Kachnowski shows that Burks was "given the run-around," and reflects a retaliatory denial of a promotion opportunity. He argues, it seems, that he was somehow misled into believing that he was not required to apply for an open position, and that Stearns was taking care of it for him.

We cannot draw the conclusion that Burks was "given the run-around," for the following reasons. First, Burks has not provided any evidence that anyone—Storbeck or any other individual—communicated to Burks that Stearns was setting up the SCBT for him. In order for Kachnowski's statement to carry any retaliatory force, Burks must show that it prevented him from following the proper application procedures. Burks has not provided any facts to show he was even aware of Kachnowski's statement—let alone that he acted upon it. Second, Burks has provided no evidence that Kachnowski had any knowledge of Burks's prior race-discrimination complaint. Without that knowledge, Kachnowski would have had no basis for retaliatory behavior. And third, in order to impute a retaliatory motive to the other two members of the communication—Storbeck and Gutmann—one would have to believe that the email communication constitutes evidence of a silent conspiracy to mislead Burks into believing that the SCBT was being set up for him.

That is not a reasonable inference to draw from the evidence presented.

As for the second denial, Burks argues that he was again prevented from taking the SCBT during the period that he had an application on file. Burks does not dispute Union Pacific's contention that an applicant would be invited to take the SCBT only if an Assistant Signal Person job became available. He argues that Union Pacific has outright lied in stating that no jobs became available during the time that Burks had an application on file.

Burks makes this argument, quite simply, by misstating the record evidence. According to Burks, Schop stated in a letter that Burks was eligible for a position "in any seniority district." Schop's letter, however, stated that applicants applying through the *external* method could apply for positions "in any seniority district." As for the *internal* method, Schop's letter is exceedingly clear: "When a position opens *in the applicant's seniority district*, he/she is invited to take the Skilled Craft Battery Test" (emphasis added). Burks never applied for any positions through the external method— only the internal one. So even if positions in other seniority districts became available, those positions would not have affected Burks's eligibility to take the SCBT.

Burks does not present any facts to suggest that positions within his own seniority district became available while he had an application on file. Burks asks us to consider the deposition transcript, and related exhibits, from union representative Doucet. He claims that Doucet's testimony shows that "the railroad was hiring Assistant Signal Persons during the time when plaintiffs were being given the run-around."

Doucet's testimony did nothing more than establish that some individuals started work as Assistant Signal Persons between October 2011 and January 2012 in Zones 4 and 5. Doucet explicitly stated that he had no idea when those positions became available, when those applicants applied, or whether they were internal or external applicants. He also said nothing about the seniority districts of those positions or applicants. Even considering Doucet's testimony, which was likely not considered by the district court, Burks simply does not put forward any facts to show that positions became available in his seniority district at the time he had an application on file.

Because Burks cannot establish that Union Pacific denied him the opportunity to take the SCBT, he cannot prevail under either the direct or the indirect method of proof.

*D. Jones*

Jones also appears to argue that he was twice denied the opportunity to take the SCBT. First, Jones argues that he tried to apply for an open position internally in June 2011 and was "given the run-around." In his deposition, Jones testified that he submitted an online application in June and never received a response from Union Pacific. Jones then requested assistance from Doucet, who emailed employees at Union Pacific on June 28, 2011. Union Pacific employee Eggspuehler responded within three hours, stating that Jones had no application on file. She provided the link through which Jones should reapply, as well as an explanation of the process. Doucet testified that he communicated this information to Jones immediately. Jones did not reapply until September 3, 2011.

This chain of events does not represent a "run-around." First, Jones provides no factual basis upon which to conclude that the initial application he claims he submitted was somehow lost or scuttled due to retaliatory motives. As the district court stated, "[h]is supposition about possible nefarious motives on UP's part does not create a triable issue of fact." *Burks v. Union Pacific Railroad*, No. 12 C 8164, 2014 WL 3056529, at *6 (N.D. Ill. Jul. 7, 2014). Second, Jones provides no basis upon which to infer retaliatory motives on the part of Eggspuehler, or any other unnamed Union Pacific employees, after they were made aware of his attempts to apply. Eggspuehler provided Jones, through Doucet, with the information he needed to submit an application. She did so in a timely and transparent manner. And Jones provides no evidence that Eggspuehler, or anyone else in her department, knew of his prior race-discrimination complaint. Finally, Jones does not provide any evidence to suggest that his delay in applying (or reapplying)—over two months after this communication—was due to anyone else's involvement. This chain of events does not constitute a denial of the opportunity to take the SCBT.

Jones's second argument is identical to Burks's—that he was denied the opportunity to take the SCBT while his application was on file. We will not belabor the point—his argument fails for the same reasons that Burks's argument failed.

### III. CONCLUSION

For the reasons explained above, the judgment of the district court is AFFIRMED.