NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 26, 2016
Decided June 15, 2016

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-3767

| | |
|---|---|
| SUSAN SHOTT, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Western Division. |
| v. | |
| | No. 11 C 50253 |
| RUSH UNIVERSITY MEDICAL CENTER, | **Frederick J. Kapala**, |
| *Defendant-Appellee*. | *Judge*. |

## O R D E R

Susan Shott, a tenured associate professor of biostatistics at Rush University Medical Center, appeals the grant of summary judgment for Rush in this employment discrimination suit. We affirm.

Shott holds a Ph.D. in statistics from the University of Chicago and has been teaching at Rush since 1982. She first sued Rush in 1994, alleging that university administrators discriminated against her based on her disability (severe rheumatoid arthritis) and religion (Orthodox Judaism), and retaliated against her for complaining about discrimination. A decade of litigation involving two jury trials eventually ended with a finding of no liability for religious discrimination or retaliation but an award to

Shott of damages of $60,000 for disability discrimination and a substantially larger attorney fee award. See *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736 (7th Cir. 2003).

Our account of the facts here applies the summary judgment standard, considering the facts that cannot reasonably be disputed based on the record evidence, but also giving plaintiff Shott as the non-moving party the benefit of all conflicts in the evidence and of all reasonable inferences favorable to her case. See *Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 994 (7th Cir. 2016). While the first lawsuit was going forward, Shott's rheumatoid arthritis worsened and she began to spend less time working on campus and more time working from home. She began using a mobility assistance dog in 2001, and she underwent over 50 surgeries for rheumatoid arthritis before her pulmonary hypertension made surgery too risky. In 2002 she moved to Harvard, Illinois, 75 miles northwest of Chicago, because she believed that Chicago's polluted air exacerbated her pulmonary hypertension. And since her rheumatoid arthritis made it uncomfortable for her to drive for extended periods, she eventually began working entirely from home.

Although Shott maintains that she has continued to work full-time on various research projects, she has become increasingly disengaged from Rush and the rest of the academic community. For example, she has not taught a full course for credit since at least 1994, has not been listed on any funded grant since at least 2005, and currently has no relationships with the other faculty-level biostatisticians at Rush.

Shott's more recent suit against Rush—and the subject of this appeal—stems from events in 2008 when she demanded that Rush administrators increase her pay and promote her to a full professor. (She was last promoted to associate professor and granted tenure in 1994.) Under Rush's rules of governance, Shott should have sought promotion by obtaining a recommendation from the chairperson of one of the two departments in which she held joint appointment—the Department of Internal Medicine (chaired by Stuart Levin) and the Department of Preventive Medicine (chaired by Lynda Powell). Shott never asked Levin or Powell to recommend her for promotion. Instead, she went over their heads and demanded that Rush's CEO (Larry Goodman) or the Dean of Rush Medical College (Thomas Deutsch) promote her unilaterally.

In response to Shott's demands, Deutsch offered to raise her salary by about 7% and to support her transfer to the department of her choice. She could increase her chances of further advancement, he added, by obtaining grant funding to cover some of her salary. Shott rejected Deutsch's proposals, insisting that Rush immediately triple her salary, promote her to full professor, and pay her $700,000 in back pay, plus interest, and

compensation for pain and emotional distress caused by Rush's alleged discrimination and retaliation. Rush did not agree to these requests but still gave her the 7% salary increase that Deutsch had proposed.

Dissatisfied with Rush's response, Shott obtained a right-to-sue letter from the Equal Employment Opportunity Commission and in 2011 filed this suit against Rush. Shott alleged in her operative complaint that Rush administrators discriminated against her because she is Jewish and retaliated against her for bringing her previous suit by (1) denying her promotion to full professor and (2) underpaying her. See 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17. She further alleged that Rush administrators violated Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213, by subjecting her to a hostile work environment because of her disabilities.

The district court granted summary judgment for Rush on all counts. The court first explained that Shott's "denial-of-promotion claims" (as distinct from her "compensation claims") failed because Shott never used Rush's procedures for applying for promotions and thus was never denied a promotion for purposes of employment discrimination law. The court next rejected her compensation claims, reasoning that Shott had not identified suitable comparators or presented evidence of pretext, so that a reasonable jury could not find in her favor. Finally, the court assumed that the ADA could support a claim for hostile work environment, see *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009) (declining to decide whether hostile work environment claim is actionable under the ADA), but concluded that Shott had presented insufficient evidence for a jury to conclude that Rush administrators targeted her for harassment because of her disabilities.

On appeal Shott complains that the district court's order granting summary judgment for Rush contains so many prejudicial errors that "describing all of them would push [her] brief well over its word limitation," and she attributes those errors to the court's "intense prejudice" against her. In addition to this unsupported charge of bias (as well as numerous undeveloped objections), Shott has developed arguments that the district court erred by: (1) ignoring evidence of anti-Semitism on Rush's part, (2) concluding that she had not sought promotion through the proper procedures, (3) limiting discovery about potential comparators, and (4) rejecting her potential comparators as not similarly situated.

Shott first accuses the district court of ignoring "smoking gun" evidence of Rush's anti-Jewish discrimination against her. The evidence she points to is actually Rush's

decision to defend itself against her accusations of anti-Semitism. She faults Rush for denying the anti-Semitic nature of jokes told to her during the 1990s by a Jewish administrator at Rush, since deceased. These jokes had been a basis for Shott's unsuccessful claims of religious discrimination in her prior suit against Rush. We understand that Shott disagreed with the jury's verdict and would have preferred that Rush admit that its administrators were biased against her faith, but Rush's litigation strategy is simply not the sort of direct evidence Shott thinks it is. See *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776 (7th Cir. 2013) (recognizing that "smoking gun" evidence is present when an employer *admits* its discriminatory intent).

Next Shott challenges the district court's conclusion that she could not show a denial of a promotion because she did not follow Rush's procedures for seeking promotion. Shott maintains that her failure to ask Levin and Powell for recommendations should be excused because any effort to seek their recommendations would have been futile. In her view, Deutsch, who as dean ultimately would have to approve any recommendation for promotion, already had "made it clear" that she "would not be promoted." In support she cites Deutsch's affidavit, which explained that he did not take the initiative to ask Levin or Powell to consider recommending her for promotion because he did not think she was qualified to be a full professor.

As the district court observed, nothing in the record—other than Shott's speculation—suggests what would have happened if Shott had followed Rush's promotion procedures and sought the backing of one of her department chairs. Also, even if it would have been appropriate for Shott to seek promotion through Deutsch rather than Levin and Powell, she failed to comply with Rush's other requirements that she supplement her application for promotion with a letter from her chairperson, at least five letters of support from senior faculty members (a majority of which should be written by people at other institutions), letters of endorsement from colleagues and former trainees, reprints of recent publications, and a current curriculum vitae. Shott provided Deutsch with only a list of her publications and a partial list of grant applications upon which she had "collaborated" (without being designated for a portion of the grant funds). Since the district court properly found that Shott never formally applied for promotion, she cannot show that she was denied promotion for unlawful reasons. See *Burks v. Union Pacific R.R. Co.*, 793 F.3d 694, 701 (7th Cir. 2015) (rejecting view that "merely speaking to a supervisor about promotion" could constitute an "application" under employer's policies; *Carter v. Chicago State Univ.*, 778 F.3d 651, 660 (7th Cir. 2015) (prima facie case for retaliatory failure to promote requires applicant to show that he applied for the position sought).

Shott next objects to the district court's refusal to order Rush to provide her with information about the religious practices of potential comparators. Shott initially sought information about the religious practices of hundreds of Rush's faculty members. The court explained that most faculty members at Rush had areas of expertise different from hers, so the court limited her pool of potential comparators to thirteen other senior biostatisticians. Shott appears not to challenge that decision and complains instead that the court should have ordered Rush to turn over information about the religious practices of those thirteen comparators rather than requiring her to collect that information from the other employees herself.

Shott has not shown that the district court abused its discretion in imposing these limits on discovery. See *Hart v. Mannina*, 798 F.3d 578, 596–97 (7th Cir. 2015). As the district court pointed out, Rush was in no better position to ask its employees about their religious practices than Shott herself was, and such questions would have been particularly problematic coming directly from an employer. Shott was free to question the thirteen biostatisticians informally or to take their depositions to determine whether they practiced Judaism. She has not shown that the district court's limits on discovery "resulted in actual or substantial prejudice." See *Gonzalez v. City of Milwaukee*, 791 F.3d 709, 713 (7th Cir. 2015).

Finally, Shott challenges the district court's conclusion that she failed to establish a prima facie case for discrimination or retaliation under Title VII and § 1981, and particularly the factor requiring her to establish that Rush treated more favorably a similarly situated employee outside the protected classes. She focuses on the court's conclusion that none of the other biostatisticians at Rush was an appropriate comparator because none had contributed as little to Rush as she had, especially with respect to grant funding.

The district court did not err in determining that Shott failed to identify any similarly situated comparators. To defeat summary judgment, Shott needed to show, among other things, that the other senior biostatisticians at Rush "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." See *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012), quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008), quoting in turn *Snipes v. Illinois Dep't of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002). The district court properly found that Shott was the only biostatistician on the faculty at Rush who never received any grant funding to support her salary between 2005 and 2012. A professor's ability or inability to obtain grant funding is often an important consideration in evaluating his or her productivity, see *Blasdel v. Northwestern Univ.*, 687 F.3d 813, 824

(7th Cir. 2012), and in that particular aspect Shott's performance fell far short of that of her proposed comparators.

We have considered Shott's other arguments on appeal, and none has merit. The district court's judgment is AFFIRMED.