In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3528

SUSAN SHOTT,

*Plaintiff-Appellant,*

*v.*

ROBERT S. KATZ,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 4863— **Virginia M. Kendall**, *Judge.*

ARGUED APRIL 26, 2016— DECIDED JULY 11, 2016

Before KANNE, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Susan Shott, a tenured associate professor of biostatistics at Rush University Medical Center, brought this lawsuit under 42 U.S.C. § 1981 alleging that one of her colleagues, Dr. Robert Katz, retaliated against her for complaining about anti-Jewish discrimination in the workplace. The district court dismissed her complaint for failure to state a claim. We affirm.

This case arises indirectly from two lawsuits Shott filed against Rush years ago. She first sued Rush in 1994 claiming that Rush administrators discriminated against her by refusing to make reasonable accommodations for her religion (Orthodox Judaism) and disability (rheumatoid arthritis). A jury rejected Shott's claim of religious discrimination but awarded her $60,000 for disability discrimination. See *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 738–39 (7th Cir. 2003). She sued Rush again in 2011. This time she alleged, among other things, that Rush administrators refused to increase her salary or promote her to full professor in retaliation for her earlier lawsuit. The district court granted summary judgment for Rush, and we affirmed. See *Shott v. Rush Univ. Med. Ctr.*, No. 15-3767, 2016 WL 3316618 (7th Cir. June 15, 2016).

While her second lawsuit against Rush was pending, Shott also sued Katz, whom she had occasionally helped with statistical analysis. She alleged that, in retaliation for her ongoing litigation against Rush, Katz impeded her career advancement by rebuffing her invitations to collaborate on research articles. She explained that "[p]ublication of research articles is very important for the career advancement of Rush Medical School faculty members" and that "[b]y refusing to publish research articles with Dr. Shott and refusing to do research with her, Dr. Katz has caused significant damage to Dr. Shott's career."

Katz was also Shott's treating rheumatologist. She also accused him of retaliating against her by refusing to respond in timely fashion to her requests for prescription refills. When Katz did respond, he agreed to refill Shott's medications but

only if she would come in for an examination every six months, a requirement that she found inappropriate.

The district court dismissed Shott's complaint for failure to state a claim. The court explained that Katz's alleged withholding of medical treatment did not state a claim for retaliation under § 1981 because Shott had not alleged that Katz's medical care affected her employment. The court also concluded that she failed to allege a sufficient "nexus" between Katz's refusal to collaborate and her career advancement at Rush. The court gave Shott fourteen days to file an amended complaint, but she chose to appeal instead.

We begin with a jurisdictional matter. Because Shott filed her notice of appeal four days before her deadline for filing an amended complaint, Katz has moved to dismiss the appeal for lack of jurisdiction. But as Katz now concedes, "[w]hen a judge conditionally dismisses a suit, but gives the plaintiff time to fix the problem that led to dismissal … , the order becomes an appealable 'final decision' once the time for correction has expired, whether or not the court enters a final judgment." See *Davis v. Advocate Health Ctr. Patient Care Express*, 523 F.3d 681, 683 (7th Cir. 2008). There has been no activity in the district court since Shott filed her notice of appeal, so the district court's order dismissing her complaint without prejudice became a final decision within the meaning of 28 U.S.C. § 1291. See *id*.; *Borrero v. City of Chicago*, 456 F.3d 698, 699–700 (7th Cir. 2006). We therefore have jurisdiction over this appeal.

Section 1981 "protects the right of all persons to make and enforce contracts regardless of race." *Carter v. Chicago State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (internal quotation marks omitted). The Supreme Court has recognized that Jews

are among the "identifiable classes of persons" the statute protects. See *Saint Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 611–13 (1987); *Lubavitch-Chabad of Ill., Inc. v. Northwestern Univ.*, 772 F.3d 443, 446–47 (7th Cir. 2014); *Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1261 (7th Cir. 1990)); cf. *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987) (explaining that although "Jews today are not thought to be members of a separate race," they are nonetheless protected under 42 U.S.C. § 1982 because at the time of the statute's adoption they "were among the peoples then considered to be distinct races").

To state a retaliation claim under § 1981 based on events occurring in the workplace, an employee must show that she suffered a materially adverse action because she engaged in protected activity. See *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011); *Silverman v. Board of Education*, 637 F.3d 729, 740–42 (7th Cir. 2011). "Individual employees can be held liable under Section 1981 if they 'participated' in the retaliatory conduct." *Carter*, 778 F.3d at 657, quoting *Smith v. Bray*, 681 F.3d 888, 896–97 (7th Cir. 2012); see also *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015) (recognizing that third-parties may be liable under the statute for tortiously interfering with an employee's relationship with her employer for racial reasons); *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) (same).

Shott contends that the district court construed § 1981 too narrowly by requiring her to allege that Katz's acts of retaliation were related to an adverse *employment* action. As a general matter, we agree with her that the court's focus on employment was unwarranted. The statute forbids *any* retaliatory actions that are "harmful to the point that they could well

dissuade a reasonable worker from making or supporting a charge of discrimination," and those retaliatory actions need not be directly "related to employment or occur in the work-place" except that their harm must have been caused by con-tract- or employment-related events. *Burlington Northern and Santa Fe R.R. Co. v. White*, 548 U.S. 53, 57 (2006); see *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 848–49 (7th Cir. 2007).

That analytic error was harmless, though. A plaintiff can plead herself out of court by alleging facts that show she has no legal claim. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). The retaliatory acts Shott alleged cannot plausibly be considered *materially* adverse. See *Burlington Northern*, 548 U.S. at 57. Shott did not, for example, allege that Katz was un-der any obligation to work with her or that he discouraged anyone else from working with her. Even if Katz's refusal to collaborate with her was in some way motivated by disap-proval of her litigation against Rush, that would not be action-able under § 1981. We held in *Smith v. Bray*, 681 F.3d 888, 898–900 (7th Cir. 2012), that an individual employee could be lia-ble under § 1981 for causing an employer (under a "cat's paw" theory) to take retaliatory action against an employee. We have not gone so far, however, as to suggest that a plain-tiff's fellow employees violate the implied retaliation prohibi-tion in § 1981 by not seeking out the plaintiff to collaborate on professional projects.

Moreover, Katz's decisions about what research projects to pursue—and with whom—are protected by the First Amendment and would not serve as a proper basis for hold-ing him liable for violating Shott's civil rights. See *Trejo v. Sho-*

*ben*, 319 F.3d 878, 884 (7th Cir. 2003) (First Amendment protects faculty member's right to participate in "academic debates, pursuits, and inquiries"); *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1275 (7th Cir. 1982) (recognizing that right to academic freedom includes right to carry on research without interference from fellow faculty members); *McElearney v. University of Ill. at Chicago Circle Campus*, 612 F.2d 285, 288 (7th Cir. 1979) ("Academic freedom does not empower a professor to dictate to the University what research will be done using the school's facilities."); see also *Hosty v. Carter*, 412 F.3d 731, 736 (7th Cir. 2005) (en banc) ("Let us not forget that academic freedom includes the authority of the university to manage an academic community and evaluate teaching and scholarship free from interference by other units of government, including courts.").

Nor is it plausible that Katz's request to examine Shott every six months as a condition of continuing her prescriptions amounted to a material adverse action. If she was not willing to comply with that obviously reasonable condition, she should have tried to find a new doctor, not filed a federal civil rights lawsuit against Katz.

AFFIRMED.