NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 27, 2019
Decided March 4, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-2410

| | |
|---|---|
| FREDRICK B. LLOYD, <br>  *Plaintiff-Appellant*, <br><br> *v.* <br><br> MAYOR OF THE CITY OF PERU, et al., <br>  *Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. <br><br> No. 3:15-cv-624 <br><br> Robert L. Miller, Jr., <br> *Judge*. |

**O R D E R**

Fredrick Lloyd, the only African-American police officer working for the City of Peru, was fired after years of accumulating discipline for repeated, escalating workplace violations. The district court entered summary judgment for the city on Lloyd's claims of race discrimination and retaliation. Because Lloyd did not present sufficient evidence of these claims, we affirm the judgment.

## I. Background

Lloyd worked as a patrol officer from 2003 until 2015. Some aspects of his tenure were positive. The current chief of police, Michael Meeks, said that Lloyd was not

dishonest or sloppy with his paperwork, was professional, and treated members of the public and other officers with respect. Another supervisor stated that Lloyd's job performance and attendance were either better than or no worse than that of other officers. While he was on the force, however, fourteen white officers were promoted, and six other white officers and Lloyd were not.

Lloyd encountered racial animus at work twice. The first time was in 2005 when he was on patrol with a white officer who later became a chief of police. As that officer arrested an African-American suspect, she yelled, "Get your black 'a' on the ground now." The second incident occurred with another chief, Ray Raney, who told Lloyd at an unspecified time, "You can't intimidate me, boy."

Throughout his tenure, Lloyd was disciplined for violating workplace rules. Before 2014, he was reprimanded for (1) using the police database to run a background check on himself, (2) taking a marked police car out of the county, (3) arriving late to, or missing, mandatory trainings, and (4) allowing his compensatory time to run a negative balance, all in violation of department regulations.

Lloyd appealed a reprimand for missing a mandatory training to the Board of Works, the city's dispute-resolution body, and his conduct on appeal led to a suspension in 2014. During the appeal, when it appeared that Lloyd was going to lose, he accused members of the police department of behaving illegally. The city attorney instructed Lloyd to report any criminal activity to the Indiana State Police, and the Board asked Lloyd to present his evidence of crimes. Lloyd presented some documents, but he refused to name officers or specify their crimes. After reviewing the documents, the Board ruled that Lloyd's allegations were unfounded and ordered the chief of police to review Lloyd's conduct on appeal. The chief determined that Lloyd had violated orders by not reporting his allegations to the Indiana State Police and by raising unsubstantiated allegations to the Board. As punishment, Lloyd was suspended for five days without pay.

Lloyd accumulated more discipline in the following months. He received a second five-day suspension in late 2014 for conduct unbecoming an officer (lying), disobeying other orders, and leaving work early without authorization. A month later, Lloyd was again cited for conduct unbecoming an officer after he failed to appear for a deposition and then lied about it. Lloyd's last violation came in 2015. After a superior reported that Lloyd twice responded insubordinately to an order to return a rifle, Chief Raney cited Lloyd for two counts of conduct unbecoming an officer.

After reviewing Lloyd's disciplinary history, Chief Raney recommended that the Board of Works fire Lloyd. Under the department's "discipline matrix," the presumptive sanction for a score of 8 is termination, and Lloyd had reached 15. Lloyd requested and received a hearing before the Board to dispute the chief's recommendation. Before the hearing, he was patted down and searched by officers. Humiliated, Lloyd refused to participate in the hearing. The Board found that Lloyd had violated multiple orders and fired him.

In this suit, Lloyd alleges that the defendants did not promote him, disciplined him, and fired him because of his race and to retaliate for his allegations of crimes. *See* 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981. (He appears to have abandoned a claim of age discrimination.) The defendants moved for summary judgment, presenting evidence of five white officers who were disciplined and fired for violations similar to Lloyd's. The district court granted the motion.

## II. **Analysis**

On appeal, Lloyd argues that his overall treatment at the department reflected unlawful race discrimination and retaliation. We consider whether the evidence as a whole could permit a reasonable fact-finder to conclude that Lloyd's race or protected speech prompted his discipline or discharge. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Under one method of proving a race-discrimination claim, which Lloyd uses, the plaintiff bears the burden of furnishing evidence that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) at least one similarly situated employee not in his protected class was treated more favorably. *Id.* at 225; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). This framework is not the only method of proof available because we review the evidence holistically to see if it permits an inference of race discrimination. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016).

Before addressing the sufficiency of the evidence, Lloyd first argues that we should remand his case because neither the defendants nor the district court explicitly considered his failure-to-promote claim. But he is mistaken. Both parties addressed the claim at oral argument on the summary-judgment motion. When the court asked Lloyd to clarify what promotion decision was at issue, he responded that he was never considered for upward advancement because of his race. The district court treated this response as an argument that his race limited his workplace opportunities generally.

Lloyd contends that he furnished sufficient evidence to support his claim that race discrimination explains his lack of a promotion over his 12 years of employment. He cites the two positive statements from superiors about his work, and notes that 14 white officers were promoted during his tenure. But this evidence is insufficient for two reasons. First, the record contains no evidence that Lloyd "was qualified" for the promotion or that the police department promoted a white officer "who was not better qualified for the position" than Lloyd—both necessary elements of a failure-to-promote claim. *See Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 894 (7th Cir. 2016); *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 273 (7th Cir. 2004). Second, the record does not permit an inference that only white officers get promoted because at the same time that the city promoted fourteen white officers, it did not promote six others. Therefore, Lloyd did not present a triable claim for failure to promote.

Next, Lloyd argues that his discipline and discharge were not justified. But the police department offered a "legitimate, nondiscriminatory reason" for disciplining and firing him: Lloyd's workplace misconduct. *See Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 412 (7th Cir. 2018) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802.) The police department provided overwhelming evidence of these repeated infractions. Over 12 years, Lloyd regularly missed trainings, violated workplace rules, lied to superiors, disregarded orders, and accumulated a disciplinary score that justified discharge. Although Lloyd contests the charges and discipline, "[i]t is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual…." *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012). "Pretext is more than a mere mistake; it means a lie—a phony reason for the employment action." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017) (internal quotation marks omitted).

Lloyd responds, though without adequate evidence, that the charges against him were a pretext for race discrimination. He observes that most reprimands occurred between 2014 and 2015 under two chiefs, each of whom had once used racially charged language. "Racial epithets or stray remarks may be direct or circumstantial evidence of intentional discrimination if they are sufficiently connected to the employment decision." *Dandy*, 388 F.3d at 272; *see Volovsek v. Wis. Dep't of Agr., Trade & Consumer Prot.*, 344 F.3d 680, 690 (7th Cir. 2003). But, for several reasons, Lloyd has not connected the two racist remarks to his discipline.

First, the chief who, years earlier as a patrol officer, told a suspect to get his "black 'a' on the ground," never disciplined Lloyd. So that comment (though abhorrent) has no relevance to Lloyd's claim. Second, Raney's comment addressing Lloyd as "boy" is also not connected to any discipline. Although Raney was chief while Lloyd received most of his discipline, the "boy" epithet occurred in an unknown context, so a jury could only speculate that it influenced the decision to discipline Lloyd. And speculation is not a rational inference. *See Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014).

Raney's comment is disconnected from Lloyd's discipline for another reason: *other* officers reported most of Lloyd's misconduct to Raney, so a jury could not connect Raney's comment to the geneses of these reports. Lloyd replies that Raney recommended suspending him for missing a deposition and firing him for his cumulative discipline. But Lloyd does not dispute that he missed the deposition and acquired a disciplinary record that called for his firing. Instead, he argues that missing the deposition was a minor misstep that did not justify discipline because white officers who also missed the deposition were not sanctioned as harshly. Lloyd, however, overlooks the fact that he was disciplined not just for missing the deposition, but also for lying about it. Because an employer may reprimand its workers for legitimate workplace violations, *see, e.g., Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 466 (7th Cir. 2014), and Lloyd's misconduct was more egregious than the white officers to whom he compares himself, the discipline was legitimate.

The remaining evidence that Lloyd points to is also insufficient to permit an inference of race discrimination. He observes that he was the only African-American officer on staff since 2003, but he has not supplied evidence that other qualified black applicants sought to work for the department during this time and were turned away. Lloyd also asserts that the department violated its own policy by not giving him written notice of his firing and treating him "like a common criminal" when it searched him before the Board's hearing. But Lloyd presents no evidence that this alleged departure from office policy was race-based. In any case, given that Lloyd had accumulated nearly double the disciplinary points for discharge, a jury could not infer that the outcome would have been different had he received written notice or not been searched. Thus, summary judgment was proper on the discrimination claim.

Finally, we turn to his retaliation claim. To survive summary judgment, Lloyd needed to present evidence suggesting "that []he suffered a materially adverse action because []he engaged in protected activity." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir.

2016). But Lloyd failed to argue, both in the district court and on appeal, that he engaged in a protected activity. We surmise that Lloyd is referring to his statements before the Board alleging police misconduct. But under the statutes that Lloyd has invoked—Title VII and § 1981—the protected speech must concern discrimination, not general wrongdoing. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (citing 42 U.S.C. § 2000e-3(a)); *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (citing 42 U.S.C. § 1981). And Lloyd cannot pivot to 42 U.S.C. § 1983 and invoke the First Amendment to save this claim. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). That is what happened here; Lloyd made his accusations within the department's operational framework and in response to his duties. The Board therefore could review the accusations and discipline Lloyd when it found that he raised unfounded charges. *See id*. at 422.

Thus, we affirm the district court's judgment.